UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAN HARRIS,<br><br>                    Plaintiff,<br><br>          -against-<br><br>TD AMERITRADE CLEARING INC.,<br><br>                    Defendant. | Case No.: 1:21-cv-08851<br><br>Hon. Mary Kay Vyskocil, U.S.D.J.<br>Hon. Stewart D. Aaron, U.S.M.J. |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**BRYAN CAVE LEIGHTON PAISNER LLP**
Eric Rieder
Laith J. Hamdan
1290 Avenue of the Americas
New York, NY 10104
T: 212-541-2000
E: ERieder@bclplaw.com
E: Laith.Hamdanbclplaw.com

*Attorneys for Defendant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................................ 1
STATEMENT OF FACTS .................................................................................................................. 1
    I.    Arbitration Agreements ............................................................................................. 1
    II.    Facts Underlying Harris's Claims............................................................................ 2
    III.    Litigation History ...................................................................................................... 4
ARGUMENT ......................................................................................................................................... 7
    I.    Harris's Claims Should Be Dismissed With Prejudice............................................ 7
        A.    Harris's Claims Are Barred By the Doctrine of *Res Judicata*. .................... 7
        B.    Harris's Claims Are Barred By the Statute of Limitations. ......................... 9
    II.    Alternatively, Harris's Claims Should Be Dismissed Without Prejudice Because FINRA Arbitration Is the Exclusive Forum for Harris's Claims........................... 11
CONCLUSION ................................................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Cases**

*Allen v. McCurry*, 449 U.S. 90 (1980) ................................................................................... 7, 8

*CompuCredit Corp. v. Greenwood*, 565 U.S. 95 (2012) ............................................................ 11

*Conn. Gen. Life Ins. Co. v. Biohealth Labs., Inc.*, 988 F.3d 127 (2d Cir. 2021) ......................... 10

*Day v. Moscow*, 955 F.2d 807 (2d Cir. 1992) ............................................................................. 8

*Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d Cir. 1984) ......................................................... 6

*Harris v. TD Ameritrade Inc.*, 2020 WL 3073235 (S.D.N.Y. Jun. 10, 2020) ......................... 6, 13

*Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170 (S.D.N.Y. 2018) ...................................... 5, 13

*Harris v. TD Ameritrade, Inc.*, 805 F.3d 664 (6th Cir. 2015) ..................................................... 4

*Harris v. TD Ameritrade, Inc.*, 837 Fed. Appx. 841 (2d Cir. 2021) ................................ 7, 12, 13

*Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261 (2d Cir.1997) ............................................. 8

*Monahan v. New York City Dep't of Corr.*, 214 F.3d 275 (2d Cir. 2000) ................................... 8

*TD Ameritrade, Inc. v. Kelley*, 2016 WL 5660399 (S.D.N.Y. Sept. 30. 2016) ............................ 4

*TD Ameritrade, Inc. v. Kelley*, 2021 WL 918621 (S.D.N.Y. Mar. 10, 2021) ............................... 7

*Waldman v. Village of Kiryas Joel*, 207 F.3d 105 (2d Cir. 2000) ............................................... 9

*Wilkov v. Ameriprise Fin. Servs.*, Fed. Appx. 44 (2d Cit. 2018) ................................................. 9

*Xue v. Koenig*, 2021 WL 1092503 (S.D.N.Y. Mar. 22, 2021) ................................................... 10

**Statutes**

9 U.S.C. § 12 ................................................................................................................................ 6

9 U.S.C. § 2 ................................................................................................................................ 11

**Other Authorities**

*In re Energy Source, Inc.*, 2009 WL 3633868 (SEC Rel., Nov. 3, 2009) .................................... 3

*Order Granting Approval of a Proposed Rule Change*, 2016 WL 7115454 (SEC Rel., Dec. 6, 2016) ........................................................................................................................................ 3

*SEC v. Lahr & Megas*, 2020 WL 1433038 (SEC Rel., Mar. 24, 2020) ....................................... 2

**Rules**

CPLR § 213 ................................................................................................................................ 10

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 14

USA.604576766.7/ISP

Defendant TD Ameritrade Clearing Inc. ("TDAC") respectfully submits this Memorandum of Law in support of its motion to dismiss the claims asserted in the second amended complaint (ECF # 9, the "Complaint") filed in this action by *pro se* plaintiff, Jan Harris ("Harris").

## PRELIMINARY STATEMENT

Harris is a serial litigant who has repeatedly attempted to press these same baseless claims against TDAC and its affiliates in multiple forums for the past decade. Her claims were denied on the merits in arbitration before the Financial Industry Regulatory Authority ("FINRA") in 2011 and 2014, and dismissed as subject to mandatory arbitration by this Court in 2020, in a decision affirmed by the Second Circuit in 2021. Now Harris has filed yet another lawsuit based on the same core allegations in an attempt to avoid the outcome of these prior arbitrations and litigations. However, as this Court and the Second Circuit have recognized, her claims cannot be re-litigated in this forum.

## STATEMENT OF FACTS

### I. Arbitration Agreements

Harris is a customer of TDAC, through its predecessors in interest, Ameritrade, Inc. ("Ameritrade") and Scottrade, Inc. ("Scottrade").[1] As a result, her relationship with TDAC is governed by two written agreements – both containing arbitration provisions – that she entered into when she opened her accounts with TDAC's predecessors. Harris's agreement with Ameritrade (the "Ameritrade Agreement") provides in relevant part:

> *All controversies concerning (a) any transaction, (b) the construction, performance or breach of this or any other agreement, whether entered into prior to, on or after the date of this Agreement, or (c) any other matter which may arise between Ameritrade or its representatives and me [Harris] shall*

---

[1] Reference to TDAC in this memorandum is intended to refer also to Ameritrade and/or Scottrade, as applicable.

> *be determined by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc. [FINRA's predecessor].*

(Declaration of Eric Rieder, filed contemporaneously herewith, ("Rieder Decl.") ¶ 3, Ex. 1 ¶ 92.) The Ameritrade Agreement further provides that arbitration awards are "generally final and binding," that "[a]ll parties to this Agreement are giving up the right to sue each other in court," and that the arbitrators "do not have to explain the reason(s) for their award." (Rieder Decl. ¶ 3, Ex. 1 ¶ 91.) Harris's agreement with Scottrade (the "Scottrade Agreement," together with the Ameritrade Agreement, the "Arbitration Agreements") similarly states:

> *You [Harris] agree to settle by arbitration any dispute between you and Scottrade ... relating to your Brokerage Account(s). Any arbitration under this agreement will be conducted under the arbitration rules of the National Association of Securities Dealers, Inc. [FINRA's predecessor] or any registered national securities exchange of which Scottrade is a member.*

(Rieder Decl. ¶ 4, Ex. 2 ¶ 21.) The Scottrade Agreement also provides that arbitration "is final and binding on the parties," who are "are waiving their right to seek remedies in court," and that the arbitrator's award "is not required to include factual findings or legal reasoning." (*Id.*)

## II. Facts Underlying Harris's Claims

In 2005, Harris purchased 900,000 shares of Bancorp International Group, Inc. ("Bancorp") common stock through her Ameritrade brokerage account, and another 1,520,000 shares through her Scottrade account, for a total of 2,420,000 shares. (*See* Compl. ¶ 46.) Bancorp is a "shell company" that conducted no business activities, never generated any revenue, and had just one employee (its chief executive officer).[2] (*See* Rieder Decl. ¶ 5, Ex. 3). The company reportedly had an accumulated deficit of $4.9 million, and had no assets. (*See id.*)

Harris's Bancorp shares are held electronically in "street name" for Harris through the

---

[2] Bancorp's only employee, Mr. Megas, has been accused by the SEC of violating securities laws by knowingly orchestrating and operating an offering fraud and Ponzi scheme. *See SEC v. Lahr & Megas*, 2020 WL 1433038 (SEC Rel., Mar. 24, 2020).

indirect holding system administered by Depository Trust Company ("DTC"), as is the case with the vast majority of securities traded in the public markets. (Compl. ¶ 47.) "DTC processes enormous volumes of securities transactions facilitated by book-entry movement of interests, without transferring physical certificates" by maintaining publicly traded securities "in 'fungible bulk,' meaning that each Participant whose securities of an issue have been credited to its securities account has a pro rata (proportionate) interest in DTC's entire inventory of that issue, but none of the securities on deposit are identifiable to or 'owned' by any particular Participant." *See Order Granting Approval of a Proposed Rule Change*, 2016 WL 7115454, at *1-2 (SEC Rel., Dec. 6, 2016).

Shortly after Harris purchased her Bancorp shares in 2005, TDAC learned of DTC's suspension of all non-custody services for Bancorp shares (known as a "global lock") due to widespread fraud involving those securities. (*See* Compl., Ex. 6 [ECF page 69].) The global lock includes the suspension of DTC's withdrawal services, by which ownership of securities can be transferred from street name to direct holding. (*See* Rieder Decl. ¶ 6, Ex. 4.) On August 31, 2005, the Securities and Exchange Commission ("SEC") suspended trading in the shares because of the fraud. (*See* Compl., Ex. 6 [ECF page 72].) On November 3, 2009, the SEC revoked the registration of Bancorp shares because of the company's repeated failure to file periodic reports. *See In re Energy Source, Inc.*, 2009 WL 3633868, at *1 (SEC Rel., Nov. 3, 2009).

Since 2010, Harris has repeatedly demanded that TDAC withdraw her Bancorp shares from DTC's indirect holding system, and have her shares issued to her directly. (*See* Compl. ¶ 50.) However, as a result of the events described above – including the DTC's suspension of withdrawal services in connection with its global lock on Bancorp shares – TDAC has no ability to effectuate transactions involving Bancorp shares, or to change their registration with DTC. Those issues

have been well-documented in litigation involving other Bancorp shareholders who, like Harris, have demanded physical share certificates. *See, e.g.*, *Harris v. TD Ameritrade, Inc.*, 805 F.3d 664 (6th Cir. 2015) (TDAC barred from delivering physical Bancorp share certificate because of DTC "global lock"); *TD Ameritrade, Inc. v. Kelley*, 2016 WL 5660399 (S.D.N.Y. Sept. 30. 2016) (same).

### III. Litigation History

To date, Harris has initiated *seven* unsuccessful FINRA arbitration proceedings seeking to hold TDAC liable for its inability to comply with her demands for physical Bancorp share certificates. Harris's first FINRA arbitration against Scottrade was "decided and determined in full and final resolution of the issues submitted for determination" more than ten years ago in September 2011, when Harris's claims were "denied in their entirety." (Rieder Decl. ¶ 7, Ex. 5.) At Harris's request, the arbitrator issued a written explanation for the decision, stating:

> *The Scottrade Agreement specifically provides that Respondent will not be liable for any loss caused directly or indirectly by suspension of trading of a stock such as that of [Bancorp].*
>
> *When she signed the Scottrade Agreement, Claimant, Jan E. Harris-Kimball, assumed the risk that [Bancorp] shares would lose value and, for that matter, that trading in the [Bancorp] shares could be suspended. Because trading has been suspended, Respondent cannot deliver the shares that Claimants seeks. Claimants also assumed this risk that results from the suspension of trading in [Bancorp].*
>
> *Respondent has no liability for either loss of value or the suspension of trading and the global lock. The relief that Claimants seeks is denied.*

(*Id.*)

After her claims against Scottrade were denied, Harris voluntarily withdrew her then-pending FINRA arbitration against TDAC. (Compl. ¶ 52.) In 2013, Harris "refiled" her FINRA arbitration claims against TDAC. (Compl. ¶ 53.) In that arbitration, Harris's claims against TDAC were "decided and determined in full and final resolution of the issues submitted for

-4-

determination" and Harris's claims against TDAC were "denied in their entirety." (Rieder Decl. ¶ 8, Ex. 6.)

Harris subsequently initiated two more arbitration cases (her third against TDAC and her second against Scottrade), again seeking to hold TDAC liable for its inability to re-register her Bancorp shares in her name. TDAC and Scottrade both asked FINRA to summarily dismiss Harris's arbitration claims, pursuant to Rule 12203(a) of the FINRA Code of Arbitration Procedure for Customer Disputes ("FINRA Rules"), because the claims had already been denied in prior arbitrations. (Rieder Decl. ¶ 9, Ex. 7; Rieder Decl. ¶ 10, Ex. 8.) In response to those requests, FINRA advised Harris by letters dated December 23, 2014 and February 2015 that her claims were declined pursuant to FINRA Rule 12203(a) because they "are not eligible for arbitration." (Rieder Decl. ¶¶ 11-12, Exs. 9 & 10.)

Two years later, on August 9, 2017, Harris commenced a lawsuit in this Court, styled *Harris v. TD Ameritrade, Inc., et al.* No. 1:17-cv-06033-LTS-BCM (the "Prior SDNY Case"), which – in Harris's words – "refiled … in the Southern District of New York" the same claims that had previously been denied in her FINRA arbitrations. (Compl. ¶ 56; *see also* Rieder Decl. ¶ 13, Ex. 11.) TDAC moved, among other grounds, to compel arbitration. On August 15, 2018, Magistrate Judge Barbara C. Moses issued a report and recommendation ("Report") stating FINRA arbitration was the exclusive forum for Harris's disputes with TDAC arising from transactions for Bancorp shares through her brokerage accounts. District Judge Laura T. Swain on September 24, 2018 adopted the Report, granted TDAC's motion to compel, and stayed the case pending arbitration. *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170 (S.D.N.Y. 2018).

In response, Harris filed motions asking Judge Swain to reconsider, to certify an interlocutory appeal, and to permit Harris to file an amended complaint. On July 9, 2019, the

-5-

Court issued an Order denying Harris's requests for reconsideration, as well as her request for certification of an interlocutory appeal. (Rieder Decl. ¶ 14, Ex. 12.) On July 15, 2019, the Court denied Harris's motion to amend, holding that because Harris "is required by her arbitration agreements with [TDAC and Scottrade] to arbitrate 'any controversy' with [them]," any proposed supplemental claims would also have to be arbitrated. (Rieder Decl. ¶ 15, Ex. 13.)

Harris then initiated a sixth FINRA arbitration against TDAC, but FINRA again declined to accept Harris's claims for arbitration, pursuant to FINRA Rule 12203(a), explaining that:

> [T]he claims you have alleged in your statement of claim are not eligible for arbitration because they have been previously considered in the FINRA arbitration forum and denied in FINRA arbitration cases 11-00018 [Scottrade award] and 13-02446 [TDAC award].

(Rieder Decl. ¶ 16, Ex. 14.)

On February 21, 2020, Harris informed the Court that FINRA had declined to re-arbitrate her claims. (Rieder Decl. ¶ 17, Ex. 15.) Harris then filed three more motions in succession, seeking: *(1)* relief from the stay and permission to amend her complaint; *(2)* immediate possession of her Bancorp shares; and *(3)* a declaratory judgment that her FINRA arbitrations did not preclude her from pursuing her claims in this Court. *See Harris v. TD Ameritrade Inc.*, 2020 WL 3073235 (S.D.N.Y. Jun. 10, 2020).[3] The District Court denied all three motions by Order dated June 10, 2020, in which the Court reaffirmed its holding that the Arbitration Agreements precluded Harris from litigating her disputes with TDAC outside of FINRA arbitration, explaining that Harris's "exhaustion of her opportunities in FINRA's arbitration forum, which has rejected her claims as already considered, does not entitle her to litigate her claims in this Court." *Id.* at *3. Accordingly,

---

[3] Notably, Harris's motions did not ask the District Court to vacate FINRA's decisions. Indeed, Harris never sought to vacate any FINRA decision. As Harris is likely aware, any request to vacate FINRA's awards – which were entered in 2011 and 2014 – would have been denied as untimely under Section 12 of the Federal Arbitration Act (9 U.S.C. § 12). *See Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) ("a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period [set forth in the statute] has run").

the District Court dismissed Harris's claims, without prejudice to her rights, if any, to pursue them in arbitration. *Id*. at *4. Harris appealed the June 2020 Order.

On March 1, 2021, the Second Circuit affirmed the Court's dismissal of Harris's claims, "agree[ing] with the district court that Harris was required to arbitrate her claims against" TDAC. *Harris v. TD Ameritrade, Inc.*, 837 Fed. Appx. 841 (2d Cir. 2021). On April 9, 2021, the Second Circuit entered an Order denying Harris's request for a rehearing. (Rieder Decl. ¶ 18, Ex. 16.)[4]

On August 1, 2021, Harris initiated a *seventh* FINRA arbitration against TDAC, "seeking the same relief [she is] seeking in this [action]." (Compl. ¶ 68.) As FINRA has consistently done with respect to Harris's attempts to re-arbitrate these claims, FINRA again advised Harris on August 5, 2021 that her claims were ineligible for arbitration under FINRA Rule 12203(a). (Compl. ¶ 69, Ex. 9.) In response to FINRA's continued refusal to re-arbitrate her claims, Harris has now initiated yet another judicial action for the same relief. For the reasons set forth below, this action should be dismissed.

## ARGUMENT

### I. Harris's Claims Should Be Dismissed With Prejudice.

#### A. Harris's Claims Are Barred By the Doctrine of *Res Judicata*.

Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). While "[g]enerally res judicata is an affirmative defense to be pleaded in the defendant's answer," it may be asserted in a Rule 12(b)(6)

---

[4] While Harris's appeal was pending, she also attempted to circumvent the Court's dismissal of her claims by continuing to press her claims against TDAC through a motion to intervene in a case that had been closed over four years earlier, in which the Court had previously issued an order in TDAC's favor with respect to similar disputes with another individual regarding Bancorp shares. *See TD Ameritrade, Inc. v. Kelley*, 2021 WL 918621 (S.D.N.Y. Mar. 10, 2021). Harris's motion to intervene was denied by the Court shortly after her appeal was denied. *See id.*

motion to dismiss "when all relevant facts are shown by the court's own records, of which the court takes notice." *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992). Here, the allegations in the Complaint, together with facts to which the Court may take notice, are sufficient to demonstrate that this action is barred by *res judicata*.

An action is *res judicata* if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff or those in privity with plaintiff; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citing *Allen*, 499 U.S. at 94) (internal alterations omitted). The first element is satisfied because, as alleged in the Complaint, Harris's claims against TDAC (including Scottrade) were denied on the merits by FINRA arbitrators. (Compl. ¶¶ 52-53.) Harris's claims relating to the Bancorp shares that she purchased through her Scottrade brokerage account were denied by FINRA in 2011 (*see* Rieder Decl. ¶ 7, Ex. 5) and her claims relating to her Ameritrade account were denied by FINRA in 2014 (*see* Rieder Decl. ¶ 8, Ex. 6.) FINRA's rejection of Harris's claims in arbitration constitute a final adjudications on the merits. *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267 (2d Cir.1997) ("res judicata and collateral estoppel apply to issues resolved by arbitration where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award").

The second element is met because both FINRA arbitrations were initiated by Harris herself against TDAC and Scottrade. (Rieder Decl. ¶ 8, Ex. 6.)

The third element is also satisfied because the claims asserted in this action were, or could have been, raised in Harris's FINRA arbitrations. Although the Complaint does not clearly identify the basis of Plaintiff's claim for relief in this action, her theory of liability appears to be that TDAC allegedly breached an agreement to process Harris's orders for Bancorp shares through

her brokerage accounts in the manner that she desired – which in Harris's view, would have required TDAC to obtain physical shares or electronic shares registered directly in Harris's name. (*See, e.g.*, Compl. ¶ 72 (alleging that "TDAC failed to complete my purchases of 2,420,000 Bancorp shares").)  On the face of the FINRA awards issued against Harris in 2011 and 2014, it is noted that Harris had asserted "breach of contract" claims "relate[d] to Bancorp International Group, Inc. common [shares/stock]" in each of those arbitrations.  (Rieder Decl. ¶¶ 7-8, Exs. 5-6.)[5]  As acknowledged in the Complaint, FINRA itself confirmed that Plaintiff's most recent arbitration claims – which "seek[] the same relief [Harris is] seeking in this complaint" – are "not eligible for arbitration" because this dispute has already been arbitrated. (Compl. ¶¶68-69.)  At a minimum, the claims asserted in this action "arise[] out of the same nucleus of operative facts" as the claims asserted in FINRA arbitrations, and therefore "should have been brought together with the prior action…."  *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 107 (2d Cir. 2000).  It is clear from the allegations in the Complaint that this action involves the same events and circumstances that Harris has been litigating with TDAC for the past decade.

For the reasons set forth above, Harris's claims in this action are barred by the doctrine of *res judicata*, and should therefore be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

**B.      Harris's Claims Are Barred By the Statute of Limitations.**

Harris's claims in this action are also precluded by the statute of limitation.  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Conn. Gen. Life Ins. Co. v. Biohealth Labs., Inc.*, 988 F.3d 127, 131-32 (2d Cir.

---

[5]      The Court may consider the FINRA awards in the context of this motion because they are incorporated in the Complaint by reference (Compl. ¶¶ 52-52), and are a matter of public record available on FINRA's website.  *See Wilkov v. Ameriprise Fin. Servs.*, Fed. Appx. 44, 46 (2d Cit. 2018) (holding that "District Court was entitled to take judicial notice of the Financial Industry Regulatory Authority's ("FINRA") public records").

2021). As noted above, Harris's theory of liability in this case appears to be that TDAC breached an agreement to process Harris's orders for Bancorp shares in the manner she desired – which in Harris's view, would have required TDAC to obtain physical shares or electronic shares registered directly in Harris's name. (*See, e.g.*, Compl. ¶ 72 (alleging that "TDAC failed to complete my purchases of 2,420,000 Bancorp shares").) "Pursuant to New York Civil Practice Law and Rules ("CPLR") § 213(2), a cause of action alleging breach of contract is governed by a six-year statute of limitations and accrues at the time of the alleged breach." *Xue v. Koenig*, 2021 WL 1092503, at *9 (S.D.N.Y. Mar. 22, 2021). According to the Complaint, TDAC (including Scottrade) would have breached any such agreement(s) in 2005 – over sixteen before this action was commenced – when TDAC allegedly failed to properly complete the transactions ordered by Harris for Bancorp shares. (*See* Compl. ¶¶ 72-73.) At the latest, Harris's claims would have accrued by "early 2010" – over eleven years before the commencement of this action – when Harris "requested TDAC remove [her] shares of Bancorp from street (nominee) name and register the shares in [her] own name" and TDAC advised her that it was unable to do so. (Compl. ¶ 50.) Indeed, as Harris alleges, TDAC's inability to give her physical custody of her Bancorp shares or register them directly in her name caused her to file claims against TDAC by at least as early as 2011. (Compl. ¶ 51.) Thus, the statute of limitations for Harris's claims would have *expired* – at the latest – in 2016, well before the commencement of this action.

Because the face of the Complaint demonstrates that Harris's claims are barred by the applicable statute of limitations, the Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Alternatively, Harris's Claims Should Be Dismissed Without Prejudice Because FINRA Arbitration Is the Exclusive Forum for Harris's Claims.

As set forth in Section I above, this action should be dismissed with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), which would most efficiently and expeditiously resolve this matter with finality. To the extent that the Court declines to dismiss this matter with prejudice, TDAC moves pursuant to the Arbitration Agreements between the parties, and pursuant to the Federal Arbitration Act (9 U.S.C. §§ 1-16, the "FAA"), to dismiss this action without prejudice in favor of mandatory arbitration.[6]

Section 2 of the FAA (9 U.S.C. § 2) "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). The Arbitration Agreements at issue in this case specifically state that disputes between Harris and TDAC – including disputes relating to Harris's brokerage accounts (*see* Rieder Decl. ¶ 4, Ex. 2 ¶ 21) or "any other matter which may arise between" the parties (Rieder Decl. ¶ 3, Ex. 1 ¶ 92) – must be settled by "final and binding" arbitration. The Arbitration Agreements also expressly provide that arbitration is the exclusive method for resolving such disputes. (Rieder Decl. ¶ 3, Ex. 1 ¶ 91(a); Rieder Decl. ¶ 4, Ex. 2 ¶ 21.)

In this action, as in her prior arbitrations and judicial proceedings, Harris demands relief from TDAC due to its inability to obtain physical certificates for the Bancorp shares that she ordered through her brokerage accounts. There can be no dispute that these claims fall within the broad scope of the Arbitration Agreements, and therefore cannot be pursued by Harris in this action. As the Second Circuit held in affirming this Court's dismissal of the Prior SDNY Case,

---

[6] TDAC requests this relief in the alternative because, as demonstrated by the allegations in the Complaint, Harris is likely to respond to another dismissal without prejudice by continuing to file additional baseless FINRA and/or court filings, resulting in the further waste of resources by TDAC, FINRA, and this Court in order to review and address such filings.

-11-

the Arbitration Agreements require Harris to arbitrate "any dispute arising from Harris's accounts with [TDAC]…." *See Harris*, 837 Fed. Appx. at 842. In fact, Harris alleges that she has already "submitted a Statement of Claim to FINRA's Arbitration Forum seeking **the same relief** [she is] seeking in this complaint" and that her claims were **denied** on the same grounds as her earlier attempts to re-arbitrate this dispute. (Compl. ¶¶ 67-68 (emphasis added).)

Having already litigated the arbitrability of these claims in this Court, the doctrine of *collateral estoppel* precludes Harris from re-litigating that issue in this case. "In New York, collateral estoppel has two essential elements. 'First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination.'" *Claridge Assocs., LLC v. Schepis*, 2020 WL 6505210, at *5 (S.D.N.Y. Nov. 5, 2020) (quoting *Jenkins v. City of N.Y.*, 478 F.3d 76, 85 (2d Cir. 2007)). Both elements are easily satisfied here. First, in granting TDAC's motion to compel arbitration in the Prior SDNY Case, this Court necessarily determined that the Arbitration Agreements are enforceable and apply to Harris's dispute with TDAC regarding her transactions for Bancorp shares through her Ameritrade and Scottrade brokerage accounts. In rendering its decision, this Court expressly *rejected* Harris's argument that "notwithstanding the breadth of the mandatory arbitration language at issue, there is no agreement to arbitrate this type of claim in the first place." *Harris*, 338 F. Supp. 3d at 180 (footnote and internal quotations omitted). Second, Harris had a full and fair opportunity to litigate the arbitrability issue, as she did in connection with TDAC's motion to compel arbitration, Harris's numerous motions in the District Court, her appeal, and her request to the Second Circuit for a rehearing.

To the extent that Harris contends the Arbitration Agreements have somehow *become* unenforceable due to FINRA's refusal to accept her most recent *seventh* arbitration request, that issue has also been considered and rejected by this Court and the Second Circuit.  *Harris*, 338 F. Supp. 3d at 184 (Magistrate Judge Moses held that "by dismissing plaintiff's attempt to re-arbitrate the same claims (in hopes of a better result), FINRA was affirming not only that such claims could be resolved in arbitration but that plaintiff's claims had been so resolved and – in accordance with Rule 12904(b) – would stay resolved"); *Harris*, 2020 WL 3073235, at *3 (Judge Swain held that Harris's "exhaustion of her opportunities in FINRA's arbitration forum, which has rejected her claims as already considered, does not entitle her to litigate her claims in this Court"); *Harris*, 837 Fed. Appx. at 842 (Second Circuit rejecting Harris's claim "that because FINRA refused to accept her re-submitted claims, those claims are now not arbitrable").

Because the Arbitration Agreements provide that FINRA arbitration is the exclusive method by which Harris may pursue these claims (as this Court and the Second Circuit have previously held), if this action were not barred by *res judicata* or the statute of limitations, this action should be dismissed pursuant to the FAA, without prejudice to Harris's rights (if any) to pursue them in arbitration.

*[Remainder of Page Intentionally Left Blank]*

-14-

## CONCLUSION

For the foregoing reasons, TDAC respectfully requests that the Court grant is motion to dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).  Alternatively, TDAC requests that the Court dismiss the Complaint without prejudice to arbitration, pursuant to the FAA.

Dated: February 8, 2022
      New York, NY

**BRYAN CAVE LEIGHTON PAISNER LLP**

By:   */s/ Eric Rieder*
    Eric Rieder
    Laith J. Hamdan
      1290 Avenue of the Americas
      New York, NY 10104
      T: 212-541-2000
      E: ERieder@bclplaw.com
      E: Laith.Hamdanbclplaw.com
    *Attorneys for Defendant*