```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/18/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAN HARRIS,

                         Plaintiff,

-against-

TD AMERITRADE CLEARING INC.,

                         Defendant.

1:21-cv-8851 (MKV)

**OPINION AND ORDER GRANTING MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

*Pro se* Plaintiff Jan Harris is a serial litigant. In 2005, Plaintiff purchased a total of 2,420,000 shares of Bancorp International Group Inc. ("Bancorp" or "the Company") for $17,236.53. Since that time, Plaintiff has litigated the transaction in at least seven different arbitrations, three federal actions, and one state court action—all without success. In 2020, Judge Swain dismissed claims brought against Defendant here, holding that any claim was subject to a binding arbitration agreement. The United States Court of Appeals for the Second Circuit affirmed the dismissal of the claims. Plaintiff now sues again, bringing this action for breach of fiduciary duty and breach of trust, alleging that Defendant TD Ameritrade Clearing Inc. violated its fiduciary duty to refund her for the purchase of shares of the company. Defendant TD Ameritrade Clearing Inc. again has moved to dismiss, based on the binding arbitration agreement and principles of *res judicata*. [ECF No. 16]. For the reasons stated herein, Defendant's motion is granted.

## BACKGROUND

The following facts are taken from Plaintiff's Second Amended Complaint [ECF No. 9] ("SAC"), the documents attached to Plaintiffs' Second Amended Complaint, and matters of which the Court may take judicial notice. *Global Network Commc'ns, Inc. v. City of New York*,

1

458 F.3d 150, 157 (2d Cir. 2006); *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). On this motion, the Court accepts Plaintiff's factual allegations as true and draws all inferences from those allegations in the light most favorable to her. *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015).

In 2005, Plaintiff purchased a total of 2,420,000 shares of Bancorp from brokerage firms Scottrade and Ameritrade for $17,236.53. SAC ¶¶ 2-3, 46; SAC, Ex. 5-6. Both Scottrade and Ameritrade are the predecessors in interest to Defendant TD Ameritrade Clearing Inc. ("TDAC"). *See* SAC ¶¶ 46, 46 n.17-18, 56. Plaintiff Jan Harris is a customer of TDAC. SAC ¶ 1. Plaintiff contends that she relied on the "trade confirmations, monthly account statements, and written assurances provided to" her by Scottrade and Ameritrade "that the 2,420,000 shares of Bancorp [she] owned were held by the broker on [her] behalf in 'street name' at" the Depository Trust Company ("DTC"). SAC ¶¶ 47-48. In other words, she alleges that Scottrade and Ameritrade as brokerage firms deposited Plaintiff's shares with DTC in a nominee name, while maintaining records demonstrating that Plaintiff was the beneficial owner of the shares. *See* SAC ¶ 47; *Harris v. TD Ameritrade, Inc.*, 338 F. Supp. 3d 170, 176 n.1 (S.D.N.Y. 2018) (describing Plaintiff's relationship with Scottrade, Ameritrade, and DTC).

After Plaintiff purchased her shares, Bancorp announced in August 2005 that the company had "been the victim of corporate identity fraud" and that those involved with the fraud had printed "hundreds of millions" of "invalid share certificates with the legend [Bancorp]." SAC, Ex. 6 at 2. As a result, DTC announced that it would "suspend all services, except Custody services" for Bancorp securities. SAC, Ex. 6 at 1. The practical effect of the DTC suspension (referred to as a "global lock") was that Scottrade and Ameritrade were prevented from withdrawing or transferring the names held in "street name" to direct holding. SAC ¶ 57-

58, 60. A few weeks later, the SEC suspended trading in Bancorp securities. *See In re Bancorp International Group, Inc.*, 2005 SEC LEXIS 2239, 2005 WL 3710976 (SEC Rel., Aug. 31, 2005).

At the time Plaintiff opened her brokerage accounts, she agreed to be bound by Scottrade and Ameritrade's brokerage and customer agreements. [ECF No. 17-1] ("2005 Ameritrade Agreement"); [ECF No. 17-2] ("2005 Scottrade Agreement").[1] Those agreements provided, in part, that Plaintiff would arbitrate "any dispute," 2005 Scottrade Agreement ¶ 21, or "[a]ll controversies concerning . . . any transaction," 2005 Ameritrade Agreement ¶ 92, with Scottrade or Ameritrade pursuant to the arbitration rules of the Financial Industry Regulatory Authority ("FINRA"). In connection with her Second Amended Complaint, Plaintiff also has submitted a "2021 TD Ameritrade Client Agreement" which contains an arbitration clause identical to that in the 2005 Ameritrade Agreement. [ECF No. 14 at 4-12] ("2021 TD Ameritrade Agreement").

In 2010, Plaintiff "requested [Scottrade and Ameritrade] remove [her] shares of Bancorp from street (nominee) name and register the shares in [her] own name on Bancorp's books." SAC ¶ 50. Scottrade and Ameritrade advised that as a result of the global lock they could not transfer the shares. SAC ¶¶ 52, 54, 57, 58. After Plaintiff's demands were not met, she "filed claims in FINRA's arbitration forum" against Scottrade and Ameritrade to enforce her "'absolute right' as an equitable owner" to have the Bancorp shares registered in her name. SAC ¶¶ 51-52. In September 2011, the arbitrator issued an award denying on the merits Plaintiff's claims against Scottrade in their entirety. [ECF No. 17-2] (the "2011 Award"). Plaintiff thereafter withdrew her parallel claim against Ameritrade, SAC ¶ 52, but elected to refile it in 2013 after a

---

[1] The 2005 Ameritrade Agreement and the 2005 Scottrade Agreement are attached to a declaration in support of Defendant's Motion to Dismiss. [ECF No. 17]. The Court, however, considers the two agreements on this motion because they are integral to Plaintiff's Second Amended Complaint and are incorporated by reference in the Second Amended Complaint. *See* SAC ¶¶ 51-54.

3

different arbitration involving a different claimant was successful. *See* SAC ¶ 53. In 2014, the arbitrator issued an award denying Plaintiff's 2013 claim against Ameritrade in its entirety "in full and final resolution of the issues submitted for determination." [ECF No. 17-6] (the "2014 FINRA Award").[2] Plaintiff then initiated two further arbitrations against Ameritrade (now TDAC) and Scottrade. [ECF No. 17-8]; SAC ¶¶ 53-55. TDAC and Scottrade opposed those arbitrations on the grounds that the issues had already been decided and her claims denied, and sought dismissal of her claims pursuant to Rule 12203(a)[3] of the FINRA Code of Arbitration Procedure for Customer Disputes. [ECF No. 17-7]; [ECF No. 17-8]; SAC ¶¶ 53-55. FINRA ultimately declined Plaintiff's claims pursuant to Rule 12203(a) as they were "not eligible for arbitration." [ECF No. 17-9]; [ECF No. 17-10].

## PROCEDURAL HISTORY

After Plaintiff's claims were denied in their entirety on the merits in arbitration, Plaintiff "refiled" her claims in the Southern District of New York in 2017. SAC ¶ 56; *Harris v. TD Ameritrade, Inc. et al.*, No. 17-cv-06033(LTS)(BCM), ECF No. 1. In her 2017 complaint, Plaintiff brought claims against Scottrade and TDAC for an accounting and trespass, arguing that they had interfered with her "constitutionally protected right" to "exclusive possession" of the Bancorp shares. *See generally,* No. 17-cv-06033(LTS)(BCM), ECF No. 1. TDAC moved to compel arbitration. SAC ¶ 56. Magistrate Judge Moses issued a report and recommendation that recommended, in part, Judge Swain compel arbitration since FINRA was the exclusive forum in

---

[2] The Court considers the 2011 and 2014 Awards [ECF Nos. 17-5 and 17-6] on this Motion because they are incorporated by reference in the Second Amended Complaint (SAC ¶¶ 52-53), and because the Court may take judicial notice of FINRA public records. *See Wilkov v. Ameriprise Fin. Servs.*, F. App'x. 44, 46 (2d Cir. 2018)

[3] That rule states that the "Director may decline to permit the use of the FINRA arbitration forum if the Director determines that, given the purposes of FINRA and the intent of the Code, the subject matter of the dispute is inappropriate, or that accepting the matter would pose a risk to the health or safety of arbitrators, staff, or parties or their representatives. Only the Director may exercise the authority under this Rule." *See Harris v. TD Ameritrade, Inc.*, 338 F. Supp. 3d 170, 179 n.5 (S.D.N.Y. 2018).

4

which to pursue Plaintiff's claims arising from the Bancorp transaction. *Harris v. TD Ameritrade, Inc.*, 338 F. Supp. 3d 170, 183-185 (S.D.N.Y. Aug. 14, 2018). Over Plaintiff's objections, Judge Swain adopted Magistrate Judge Moses' Report, compelled arbitration, and stayed the case. *Harris v. TD Ameritrade, Inc.*, 338 F. Supp. 3d 170 (S.D.N.Y. Sept. 24, 2018). After Plaintiff's motion to reconsider was denied by Judge Swain, Plaintiff initiated another FINRA arbitration against TDAC. That arbitration also was denied. [ECF No. 17-14]. Plaintiff then sought leave to amend her complaint in the stayed federal case, and to seek a declaratory judgment that the FINRA arbitrations did not preclude her from pursuing her claims in federal court. *See Harris v. TD Ameritrade Inc.*, 2020 WL 3073235 (S.D.N.Y. Jun. 10, 2020). After Plaintiff's requests were denied and Plaintiff's claims were dismissed without prejudice to be pursued in arbitration, *id.* at *3, Plaintiff appealed the decision to the Second Circuit. The Second Circuit affirmed, "agree[ing] with the district court that Harris was required to arbitrate her claims against" TDAC. *Harris v. TD Ameritrade, Inc.*, 837 F. App'x. 841 (2d Cir. 2021).

Shortly after the Second Circuit affirmed the prior case, Plaintiff initiated a seventh FINRA arbitration against TDAC, by her own account "seeking the same relief [she is] seeking in this [case]," SAC ¶ 68, namely, breach of fiduciary duty and breach of trust claims. SAC ¶ 4. When FINRA again denied those claims pursuant to Rule 12203(a) as ineligible for arbitration, SAC, Ex. 9, Plaintiff commenced this suit. SAC ¶¶ 68-69.

## **LEGAL STANDARD**

Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss this action for failure to state a claim and because Plaintiff's claims are subject to mandatory arbitration. [ECF No. 18 at 7, 11] ("Mem."). "[I]t is unsettled" in this Circuit whether "the correct procedural vehicle" for moving to dismiss a complaint based on the existence of a binding arbitration agreement is governed by Rule 12(b)(1) or Rule 12(b)(6). *Fed. Ins. Co. v.*

*Metro. Transp. Auth.*, 2018 WL 5298387, at *3 (S.D.N.Y. Oct. 25, 2018). Where a party has moved to dismiss pursuant to an arbitration agreement, courts have in certain situations converted a motion to dismiss to one to compel arbitration. *See Meridian Autonomous Inc. v. Coast Autonomous LLC*, 2018 WL 4759754, at *5 (S.D.N.Y. Sept. 30, 2018). A motion to compel is treated similarly to a motion for summary judgment. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). Generally, judicial conversion of a motion to dismiss to a motion to compel has been limited to situations where the party seeking dismissal has clearly indicated that it intends to compel arbitration. *See id.* at *3, *5. Defendant does not explicitly or implicitly ask this Court to compel arbitration, and instead only moves in the alternative to dismiss pursuant to the arbitration agreement. Mem. at 11. Accordingly, the Court applies the Rule 12(b)(6) standard to Defendant's Motion. *See Nicosia*, 834 F.3d at 230.

      To survive a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss for failure to state a claim, a district court "accept[s] all factual claims in the complaint as true, and draws all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks and citation omitted). This tenet, however, is "inapplicable to legal conclusions [and] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A "complaint's factual allegations must be enough to raise a right to relief above the speculative level," that is, "enough to make the claim

plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and citations omitted). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint. *Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). However, the Court may consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, and public records. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

Courts also extend *pro se* litigants, like Plaintiff here, special solicitude, *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994), and must interpret their submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). However, the "liberal pleading standard accorded to [Plaintiff as a] *pro se* litigant[] is not without limits, and all normal rules of pleading are not absolutely suspended." *Regnante v. Sec. & Exch. Officials*, 134 F. Supp. 3d, 749, 758 (S.D.N.Y. 2015). Plaintiff's Second Amended Complaint must comply with the Federal Rules of Civil Procedure and the applicable pleading standards. *See id.* Further, the Court need not accept as true Plaintiff's legal conclusions with respect to both the adequacy of her pleadings, or the viability of her claims. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal quotation marks omitted). Moreover, the Court cannot invent factual allegations for the Plaintiff that has not been pled. *See Costablie v. N.Y. City Health & Hosps. Corp.*, 951 F.3d 77, 82 n.27 (2d Cir. 2020); *Chavis*, 618 F.3d at 170.

**DISCUSSION**

I.  **PLAINTIFF IS REQUIRED TO ARBITRATE HER CLAIMS WITH DEFENDANT**

While it does not move to compel arbitration, Defendant does invoke the arbitration agreements and prior awards as grounds for dismissal. Mem. at 11. The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Indeed, whether Plaintiff's claims must be arbitrated is a threshold question for the Court which must be answered before exercising jurisdiction to hear the merits of a claim. *See Harris*, 338 F. Supp. 3d at 181-82. Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See Guyden v. Aetna, Inc.*, 544 F.3d 376 (2d Cir. 2008).

The Arbitration Agreements between Plaintiff and TDAC provide the exclusive method through which Plaintiff may pursue any claim against TDAC. 2005 Ameritrade Agreement ¶ 92 (the Parties agree to arbitrate "[a]ll controversies concerning (a) any transaction, (b) the construction, performance or breach of this or any other agreement . . . c) any other matter which may arise between [the Parties"); 2005 Scottrade Agreement ¶ 21 ("You agree to settle by arbitration any dispute between you and Scottrade . . . relating to your Brokerage Account(s)"); 2021 TD Ameritrade Agreement ¶ 12 ("I agree that any controversy between [the Parties] arising out of or relating to this Agreement, our relationship, any Services provided by you, or the use of the Services, and whether arising before or after the date of this Agreement, shall be arbitrated").

8

Here, Plaintiff admits that she is "not challenging the arbitrability of the claims in [her] SAC" or "the enforceability of the arbitration agreement." [ECF No. 20 at 7-8] ("Opp.") (emphasis in original). Instead, she argues that because her claims were determined to "not [be] eligible for arbitration," she should be allowed to pursue them here. SAC ¶ 69.

Plaintiff ignores, however, that the claims here were deemed ineligible for arbitration only *after* they were rejected *on the merits* by the arbitral forum to which she consented. Indeed, Plaintiff herself alleges that after numerous unsuccessful prior attempts, including two arbitration awards disposing of her claims in their entirety *on the merits*, in September 2021 Plaintiff submitted a "Statement of Claim to FINRA's Arbitration Forum seeking the same relief [she] is seeking in this complaint." SAC ¶ 68. Shortly after the Statement of Claim was submitted, the "FINRA Case Administrator notified [her] that 'the claims [she] alleged in [her] statement of claim are not eligible for arbitration.'" SAC ¶ 69 (quoting ECF No. 9 at 85) (the "September 2021 Letter").

The September 2021 Letter Plaintiff received from FINRA, denying the arbitrability of the claims now before this Court, is identical to the letters Plaintiff received from FINRA when her previous arbitration claims were denied. *Compare* September 2021 Letter, *with* No. 17-cv-6033(LTS)(BCM), ECF No. 37 at 21, 23. The Second Circuit squarely rejected the precise argument Plaintiff makes again here: that because FINRA refused to accept her (most recent) Statement of Claims, her claims may be pursued in federal court. *See Harris*, 338 F. Supp. 3d at 184 ("[P]laintiff [cannot] rely on the summary dismissals of her 2014 FINRA claims under Rule 12203(a). Those claims were not deemed ineligible for arbitration because of the 'type of claim' that plaintiff filed; they were deemed ineligible because she had already filed the same claims, which had already been arbitrated and decided, on the merits, by the 2011 Award and the 2014

9

Award"), *report and recommendation adopted*, 338 F. Supp. 3d 170, *aff'd*, *Harris*, 837 F. App'x at 842 ("Because the agreements broadly covered any dispute arising from Harris's accounts with the Brokerage Defendants, the district court properly compelled arbitration."); *Harris*, 837 F. App'x at 842 ("We agree with the district court that Harris was required to arbitrate her claims against the Brokerage Defendants."). As a result, Plaintiff is precluded from re-litigating in this case the arbitrability of her claims previously denied by FINRA. Accordingly, the Court dismisses Plaintiff's Second Amended Complaint without prejudice to pursue her claims (to the extent she has any) in arbitration.[4]

## II.  PLAINTIFF'S CLAIMS HERE ARE OTHERWISE BARRED BY THE DOCTRINE OF RES JUDICATA

Even if Plaintiff's exclusive method to pursue her claims were not arbitration, the Court agrees with Defendant that Plaintiff's claims here in federal court would be barred under the doctrine of *res judicata*. *See* Mem. at 7. While "[g]enerally *res judicata* is an affirmative defense to be pleaded in the defendant's answer," it may be asserted in a Rule 12(b)(6) motion to dismiss "when all relevant facts are shown by the court's own records, of which the court takes notice." *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992).

An action is barred under the doctrine of *res judicata* if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff or those in privity with plaintiff; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir.

---

[4] Plaintiff also argues that certain language in the 2021 TD Ameritrade Agreement permits Plaintiff to pursue her claims here if "a claim [is] ineligible for arbitration." Opp. at 8-9; 2021 TD Ameritrade Agreement ¶ 12. Plaintiff's claims were denied as ineligible for arbitration simply because it was previously arbitrated unsuccessfully (*i.e.*, denied on the merits). As such, the Second Circuit held that the language Plaintiff cites, which also appeared in the 2005 Ameritrade Agreement, required Plaintiff to arbitrate her claims denied as ineligible. *Compare* TD Ameritrade Agreement ¶ 12, *with* 2005 Ameritrade Agreement ¶ 91.

2000).  An arbitrator's denial of a claim has preclusive effect for purposes of *res judicata*.  *See Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998); *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994); *Farber v. Goldman Sachs Grp. Inc.*, 2011 WL 666396, at *3 (S.D.N.Y. Feb. 16, 2012) (claims barred by a prior FINRA arbitration).  All three elements of *res judicata* are met here.

Plaintiff's claims against TDAC have previously been adjudicated on the merits in her seriatim FINRA arbitrations.  In 2011, Plaintiff and TDAC[5] arbitrated her claim in which she sought "delivery of the [Bancorp] shares" and "damages from [TDAC] because it has not delivered share certificates of Bancorp."  [ECF No. 17-5] ("2011 FINRA Award").  In her statement of claims [ECF No. 20, Ex. 16] Plaintiff explained that when she asked Scottrade to "exit the indirect holding system and obtain physical possession of the stock certificates," she was told that it was impossible due to the global lock on the shares.  Accordingly, Plaintiff alleged that Scottrade breached a contract between the parties, and sought "reimburse[ment] . . . for the cost to obtain the [Bancorp] shares."  ECF No. 20, Ex. 16 at 5.  The arbitrator "decided and determined in full and final resolution of the issues" that her claims should be "denied in their entirety" and the "request for reimbursement to accounts for the costs to obtain genuine certificates [was] denied."  2011 FINRA Award.  Thereafter, in 2013, Plaintiff and TDAC again arbitrated her claims arising out of her purchase of Bancorp shares.  *See* 2014 FINRA Award.[6]  In Plaintiff's statement of claims [ECF No. 20, Ex 17] she again argued that she was "legally entitled to have [her] ownership in [Bancorp] shares directly registered in [her]

---

[5] The 2011 FINRA arbitration involved Plaintiff and Scottrade.  Plaintiff acknowledges, however, that Scottrade is "now TDAC," SAC ¶ 52, and therefore that arbitration involved a party in privity with the Plaintiff.

[6] Plaintiff makes much of the fact that the 2011 and 2014 FINRA Awards were not "rendered or confirmed by a court."  Opp. at 17.  That argument is without merit.  "Even if the arbitration award had not yet been confirmed . . . it could still have preclusive effect" for purposes of *res judicata*.  *See Kalyanaram v. New York Inst. of Tech.*, 549 F. App'x 11, 14 n.2 (2d Cir. 2013).

11

name and a [Bancorp] certificate delivered to her." The arbitrator again "decided and determined in full and final resolution of the issues" that Plaintiff's claims should be "denied in their entirety." 2014 FINRA Award.

While Plaintiff's cause of action in the arbitrations (breach of contract) differs from the theories she now asserts (common law breach of fiduciary duty and trust), the distinction is not dispositive because her claims arise from a common nucleus of operative facts. "Two claims are considered to be the same cause of action if they each arise from a common nucleus of operative fact." *Lobaito v. Chase Bank*, 2012 WL 3104926, at *2 (S.D.N.Y. July 31, 2012) *aff'd*, 529 F. App'x 100 (2d Cir. 2013). To determine whether two actions arise from the same nucleus of operative facts, the Court considers "'whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" *Id.* (quoting *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (internal quotation marks omitted). In both the 2011 and 2014 FINRA arbitrations, Plaintiff's cause of action related to the Bancorp shares she purchased in 2005 and her grievance that the shares were not converted to her name as she demanded. *See* 2011 FINRA Award; 2014 FINRA Award. It is crystal clear that the claims Plaintiff pursued in the arbitrations and the claims she now asserts here derive from the same nucleus of operative facts. In the arbitration, she claimed it was a breach of contract not to convert the shares to her name. Having lost twice in arbitration, in this case, she tries to argue it is a breach of fiduciary duty not to have done so. *See, e.g.*, SAC ¶ 72 ("TDAC failed to complete my purchases of 2,420,000 Bancorp shares"); SAC ¶ 90 ("Instead of promptly crediting the $17,236.53 back to my accounts, TDAC for sixteen (16) years used the credits to my accounts for 2,420,000 shares of Bancorp to deceive me into believing that TDAC had entered into valid contracts for the

12

purchase of Bancorp shares on my behalf, and to deceive me into believing that TDAC had actually purchased Bancorp shares on my behalf"); SAC ¶ 96 ("Since August 11, 2005, TDAC has known my purchases of shares of Bancorp were not completed, and could not be completed through the DTC system. That means for sixteen (16) years TDAC has been knowingly depriving me of the use of my $17,236.53 under the false pretense that TDAC purchased 2,420,000 shares of Bancorp on my behalf"); SAC ¶¶ 52-53; 2011 FINRA Award; 2014 FINRA Award.

It is of no moment that Plaintiff carefully frames the relief she now seeks to be just-so-slightly different than what she sought in the past. In the 2011 arbitration, Plaintiff sought "delivery of the [Bancorp] shares" and "damages from [TDAC] because it has not delivered share certificates of [Bancorp] owned by her and her IRA accounts." *See* 2011 FINRA Award. In the 2014 arbitration, Plaintiff asserted "the following causes of action: breach of contract and transfer." *See* 2014 FINRA Award. The Second Amended Complaint seeks, in essence, the same relief Plaintiff sought in her prior two arbitrations. SAC at 30-31 (Plaintiff requests an "Order for TDAC to restore $17,236.53 to my TDAC accounts"). "A party cannot avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted); *Malcolm v. Board of Educ. of Honeoye Falls-Lima Cent*, 506 F. App'x 65, 69 (2d Cir. 2012) ("'Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence'") (quoting *Berrios v. NYC Hous. Auth.*, 564 F.3d 130, 135 (2d Cir. 2009) (internal quotation marks omitted)).

In her opposition, Plaintiff contends that *res judicata* would not bar her federal action because she alleges a breach of fiduciary duty, and the doctrine of unclean hands prohibits *res*

13

*judicata* applicability because the Court "must assume the allegations [of] fiduciary misconduct are true." Opp. at 16. Plaintiff is incorrect. Only *factual* allegations must be taken as true, but Plaintiff must plausibly show that Defendant is liable. *Iqbal*, 556 U.S. at 678. By her own allegations, Defendants are *not* liable by reason of the prior arbitral awards. A plaintiff may be precluded by the doctrine of *res judicata* from bringing breach of fiduciary duty or fraud claims by reason of prior arbitral awards. *See Caron v. TD Ameritrade*, 2020 U.S. Dist. LEXIS 223310, at *11-20 (S.D.N.Y. Nov. 30, 2020).[7] Accordingly, even if Plaintiff's claims were not subject to a binding arbitration agreement between the Parties, her claims here would be barred under the doctrine of *res judicata*.

### III.  PLAINTIFF'S CLAIMS HERE ARE ALSO TIME-BARRED

Even if the Court assumed that Plaintiff's claims were entirely distinct claims against TDAC not subject to *res judicata* and not subject to arbitration, the Court agrees with Defendant that her state-law claims are time-barred. Mem. at 9. A defendant may raise in a motion to dismiss the affirmative defense that a claim is barred by the applicable statute of limitations if that defense is apparent from the face of the complaint. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).

Plaintiff properly invokes the Court's diversity jurisdiction to hear her state-law claims. SAC ¶¶ 5-6, 11. Plaintiff appears to assert a common law breach of fiduciary duty claim and a breach of trust claim pursuant to Nebraska law. SAC ¶¶ 12-14; Opp. at 22.[8] While TDAC

---

[7] Plaintiff is surely aware of *Caron* because in that case she filed an amicus brief in opposition to TDAC's successful motion to dismiss similar claims brought by a different plaintiff. *See Caron v. TD Ameritrade*, 19-cv-09015(AJN), ECF No. 16-18.

[8] Plaintiff appears to contend that SEC Rule 15c3-3 provides her a federal cause of action for breach of fiduciary duties. SAC ¶¶ 1-2, 33-34, 34. Courts that have considered the issue have "uniformly held that SEC Rule 15c3-3 . . . does not create a private right of action." *Harris*, 837 F. App'x at 843 (collecting cases). Accordingly, Plaintiff does not assert a claim that involves a federal question, as such there is not jurisdiction pursuant to 28 U.S.C. § 1331.

14

argues that New York law governs this dispute,[9] the Court need not resolve whether New York or Nebraska law applies, because Plaintiff's state-law claims are barred under either jurisdiction's statute of limitations.

A breach of fiduciary duty claim seeking monetary damages, such as what Plaintiff seeks here, is subject to a three-year statute of limitations under New York law. N.Y. C.P.L.R. § 214(4); *Torrance Constr., Inc. v. Jaques*, 127 A.D.3d 1261, 1265-66 (3d Dep't 2015). In New York, a cause of action sounding in breach of trust is subject to a six-year statute of limitations which begins to accrue at the time of the breach. N.Y. C.P.L.R. § 213(1). Under Nebraska law, a breach of fiduciary duty and a breach of trust claim are subject to a four-year statute of limitations. *See Gerber v. P & L Fin. Co.*, 2018 Neb. App. LEXIS 102, at *15 (Neb. Ct. App. Apr. 24, 2018). Plaintiff's own Second Amended Complaint explains that she began litigating her claims against TDAC and its predecessors in 2011, after she "requested TDAC remove [her] shares of Bancorp from street (nominee) name and register the shares in [her] own name," which they refused to do. *See* SAC ¶¶ 49-54.

Plaintiff acknowledges that "Nebraska, New York, and federal courts recognize the general rule that the limitations period for claims arising out of a fiduciary relationship does not commence until the fiduciary has openly repudiated his obligation or the relationship has been otherwise terminated." Opp. at 22. Plaintiff contends, however, that TDAC has not yet repudiated the purported trust or their fiduciary relationship because, as of November 2021, TDAC continues to hold her funds and securities in trust. Opp. at 22. But Plaintiff was plainly on notice that, to the extent TDAC could be accused of breaching a fiduciary duty or trust,

---

[9] The Court notes that nothing in the Second Amended Complaint suggests that venue is proper in the Southern District of New York. Indeed, the Parties are wholly foreign to New York, and there is no allegation that the initial purchase of Bancorp. shares occurred in New York. However, TDAC has not moved to transfer venue, and the Court declines to transfer venue *sua sponte*.

TDAC openly had repudiated Plaintiff when it denied earlier demands and indeed successfully opposed them in arbitration.  *See* SAC ¶¶ 49-54.  Accordingly, even if the Court considered the end of the 2014 arbitration to be the open repudiation of TDAC's duties or trust relationship, the statute of limitations expired on Plaintiff's claims in 2020.  Because Plaintiff did not commence this action until 2021, her purported claims arising out of an alleged breach of fiduciary duty or trust are untimely under either New York or Nebraska law.

## IV.     PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION

After the present Motion to Dismiss was fully briefed, Plaintiff filed a Notice of Motion for a Preliminary Injunction.  [ECF No. 23] ("Pl. Prelim. Mot.").  Plaintiff contends that she is entitled to a preliminary injunction to maintain the "pre-controversy status quo" as to "the 2005 status quo where TDAC is not depriving [her] of the use of [her] $17,236.53."  Pl. Prelim. Mot. at 4.  Defendant filed an opposition arguing that Plaintiff could not establish a likelihood of success on the merits for the reasons asserted in the Motion to Dismiss, and otherwise impermissibly delayed in seeking a preliminary injunction.  [ECF No. 24].  Plaintiff then filed a reply stating that she does not seek the $17,263.53 as money damages but as money held on her behalf, to which she is entitled.  [ECF No. 25].

Plaintiff's motion, like this suit itself, is highly frivolous.  "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).  To prevail on a motion for a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in plaintiff's favor; (2) irreparable harm if an injunction is not entered; (3) a balance of hardships that tips in the plaintiff's favor, regardless of the likelihood of success; and (4) that an injunction is in the public interest.  *Mason v. Amtrust*

16

*Fin. Servs., Inc.*, 848 F. App'x 447, 449 (2d Cir. 2021) (quoting *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015)).

For the reasons stated in this Opinion, Plaintiff cannot show a likelihood of success on the merits of her claims. Moreover, Plaintiff cannot argue that she is subject to any irreparable harm. The Second Circuit has made clear that a showing of irreparable harm is "the single most important prerequisite for the issuance" of injunctive relief. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005). Were Plaintiff ever to succeed on her iterative attempts to litigate her grievance, Plaintiff could be made whole by the money damages she seeks. *See* SAC at 30-31. Indeed, Plaintiff tacitly recognizes that the gravamen of her complaint is compensable by money damages by virtue of her seeking them in arbitration.

Further, no colorable argument for irreparable harm exists here both because Plaintiff has waited almost a decade since she first began litigating her dispute with TDAC to pursue injunctive relief, *see* SAC ¶ 75 (stating that she has been engaged in "a decade of litigation (2011-2021) against TDAC"), and because Plaintiff delayed almost half a year after commencing this action before filing her Motion for a Preliminary Injunction, [ECF Nos. 1, 23]. Delay in seeking injunctive relief "'may, standing alone, preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency' upon which the availability of the remedy is predicated." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995); *Monowise Ltd. Corp. v. Ozy Media, Inc.*, 2018 WL 2089342, at *2

(S.D.N.Y. May 3, 2018) (courts "typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.") (collecting cases).

Accordingly, Plaintiff's Motion for a Preliminary Injunction is denied.[10]

## V. LEAVE TO AMEND

In her Opposition, Plaintiff requests that the Court grant her leave to amend "to remedy any pleading defects the court finds in [the] SAC." Opp. at 4. "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quotation marks omitted). But "it is proper to deny leave to [amend] where . . . amendment would be futile." *Hunt v. All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998). Leave to amend is futile where the "proposed amendments would fail to cure prior deficiencies or to state a claim." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Numerous arbitration panels, another judge of this Court, and the United States Court of Appeals for the Second Circuit have ruled that Plaintiff does not have a valid claim. Plaintiff cannot cure that reality by shifting the theory under which she opts to litigate. Any amendment would be futile, and leave to amend is denied. Plaintiff is warned that continued abuse of the judicial process may result in limitations on her filing privileges in future cases. *In re Martin-Trigona*, 9 F.3d 226, 228 (2d Cir. 1993); 28 U.S.C. § 1651(a).

---

[10] After filing the Motion for a Preliminary Injunction, Plaintiff made a further series of filings, including a "Motion to Dismiss Defendant's Petition to Compel Arbitration for Lack of Standing," contending that Defendant lacked standing to "petition this court for a motion to compel arbitration" and had not "establish[ed] all the elements of its cause of action." [ECF No. 26 at 4]. Plaintiff next filed a letter seeking leave of the Court to file a summary judgment motion to, *inter alia*, "[c]hallenge [] Article III [s]tanding." [ECF No. 30]. Plaintiff then filed a "Statement of Undisputed Facts" [ECF No. 33], and a "Notice of Motion for Judicial Notice [ECF No. 34], which asks the Court to take notice of SEC materials, FINRA rules, and already-filed exhibits. Because the Court grants Defendant's Motion to Dismiss, Plaintiff's further requests and filings are denied as moot.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss. [ECF No. 16]. Plaintiff's Second Amended Complaint is dismissed without prejudice. Plaintiff's Motion for a Preliminary Injunction [ECF No. 23] is DENIED. Plaintiff's requests at ECF Nos. 26, 30, 32, 33 and 34 are DENIED as moot. The Clerk of Court respectfully is requested to terminate the motions at ECF Nos. 16, 23 and 34 and close this case.

**SO ORDERED.**

Date:  **August 18, 2022**
       **New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**